IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CORNELL BOLDEN, KEITH JACKSON, )
MICHAEL AMATO, and CHARLES )
MORGAN, each individually and on )
behalf of all others similarly )
situated, )
)
               Plaintiffs, )
)
    v. )      No. 03 C 5617
)
JOHN STROGER, President, Cook )
County Board, in his official )
capacity, COOK COUNTY, MICHAEL )
SHEAHAN, Cook County Sheriff, in )
his official capacity, and RUTH )
ROTHSTEIN, Director, Cook County )
Department of Health Services, in )
her official capacity, )
)
               Defendants. )

## MEMORANDUM OPINION AND ORDER

Cornell Bolden, Keith Jackson, Michael Amato, and Charles Morgan (collectively, plaintiffs) brought suit on behalf of themselves and a class of persons who suffer from mental illness and are confined in the Cook County Jail ("Jail") while awaiting trial. All four named plaintiffs were housed in Division VII of the Jail, and have been released since the complaint was filed. Mr. Bolden has been diagnosed with depression; Mr. Jackson with an anxiety disorder; Mr. Amato with schizophrenia; and Mr. Morgan with manic depressive illness. Plaintiffs claim that John Stroger, President of the Cook County Board; Cook County; Michael Sheahan, Cook County Sheriff; and Ruth Rothstein, Director of the Cook

County Department of Health Services (collectively, defendants) have violated the plaintiffs' rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.* and the Due Process Clause of the Fourteenth Amendment.

Specifically, plaintiffs seek injunctive and declaratory relief from the defendants' policy and practice of barring individuals with mental illness from various pre-release programs (Count I) and from the defendants' policy and practice of discharging individuals with mental illness without providing them with the medication and referrals they require to manage that illness (Count II). Defendants move to dismiss both counts, arguing that plaintiffs have failed to exhaust their administrative remedies; that Mr. Stroger, Ms. Rothstein, and Cook County do not meet the definition of public entity under the ADA; and that plaintiffs lack standing to bring their claims. I grant that motion, for the reasons explained below.

I.

On a motion to dismiss, I accept all well-pleaded allegations in the complaint as true, *Turner/Ozanne v. Hyman/Power*, 111 F.3d 1312, 1319 (7th Cir. 1997), and draw all reasonable inferences in favor of the plaintiffs. *Strasburger v. Bd. of Educ.*, 143 F.3d 351, 359 (7th Cir. 1998). I grant the motion only if the plaintiffs can prove no set of facts to support the allegations in their claim. *Id.*

Defendants argue that both Counts I and II must be dismissed, as plaintiffs have failed to exhaust their administrative remedies. While plaintiffs are generally not required to exhaust their administrative remedies before filing claims under the ADA, the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). *See, e.g., Booth v. Churner*, 532 U.S. 731, 736 (2001). Defendants contend that plaintiffs have failed to exhaust their administrative remedies, pursuant to the PLRA, and therefore their claims must be dismissed.

Plaintiffs first argue that their claims do not concern "prison conditions" and therefore are not subject to the PLRA. Count I alleges that detainees with mental illness in the Jail are prevented from participating in release or pre-release programs because of their mental illness. Count II alleges that detainees with mental illness are denied access to needed medication and treatment links upon release, while similar services are provided to detainees without mental illness upon their release. With respect to Count II, I agree with plaintiffs: the treatment (or lack thereof) of detainees after their release from the Jail is not a prison condition.

However, I disagree with respect to Count I. Count I alleges that Jail detainees with mental illness are excluded from participation in various release and substance abuse treatment programs. "Prison conditions" in relation to the PLRA has been broadly defined to include "the effects of actions by government officials on the lives of persons confined in prison." *Witzke v. Femal*, 376 F.3d 744, 750-51 (7th Cir. 2004)(adopting definition of prison conditions from 18 U.S.C. § 3626(g)(2), another section of the PLRA). Whether detainees are eligible for participation in the various release programs or the substance abuse program is a decision made by various Jail officials, which has a direct effect on the lives of the detainees, and falls within the broad definition of prison conditions.

The cases cited by plaintiffs in an attempt to set this claim outside that definition can be distinguished. The case that initially seems most on point with the current situation is *Monahan v. Winn*, 276 F. Supp. 2d 196 (D. Mass. 2003), where a plaintiff challenged a rule revision that deprived the Bureau of Prisons of "discretion to designate certain offenders to community confinement facilities." *Id.* at 204. However, that claim arose from a habeas petition, which is specifically excluded from the exhaustion requirement of § 1997e. The other cases are also distinguishable,

involving injuries incurred at an outside hospital,[1] parole revocation procedures,[2] or an alleged conspiracy between prosecutors and criminal investigators.[3] In contrast, courts have found that a policy restricting a prisoner's ability to receive visitors[4] does constitute prison conditions, requiring exhaustion before a federal claim challenging that policy could proceed. Construing Count I as involving "prison conditions" is consistent with Supreme Court precedent and furthers Congress' goals in enacting the PLRA, namely "to promote administrative redress, filter out groundless claims, and foster better prepared litigation of claims aired in court." *Porter v. Nussle*, 534 U.S. 516, 528 (2002).

Even if Count I is construed as involving prison conditions, plaintiffs argue that they had no administrative remedy available to them to exhaust. Plaintiffs attach to their brief a Cook County Department of Corrections General Order ("Order") detailing the

---

[1] *Borges v. Admin. for Strong Mem. Hosp.*, No. 99-C-6351FE, 2002 WL 31194558, *3 (W.D.N.Y. Sept. 30, 2002).

[2] *Valdivia v. Davis*, 206 F. Supp. 2d 1068, 1074 n.12 (E.D. Cal. 2002)(parolee situation different from that of those incarcerated).

[3] *Johnson v. Quinn*, No. 96-C-6598, 1999 WL 116222, *3 (N.D. Ill. Feb. 26, 1999)(not a prison conditions claim because majority of the defendants were not affiliated with the Department of Corrections and could not be affected by the prison grievance procedures).

[4] *Krilich v. Fed. Bureau of Prisons*, 346 F.3d 157, 159 (6th Cir. 2003).

grievance process for detainees. Plaintiffs argue that the Order is inapplicable because it does not apply to the type of grievance embodied in their claims. The Order, however, specifically states that a grievance may be initiated for "alleged violations of civil, constitutional or statutory rights," such as the rights under the ADA plaintiffs claim were violated. Plaintiffs also argue that the release programs they refer to are governed solely by the Sheriff and therefore the Jail grievance policy would have been useless to them, although the plaintiffs later argue that these same programs are, collectively, defendants' "programs, services or activities." The exhaustion requirement of § 1997e cannot be avoided simply by claiming that the desired remedy is not available through the existing grievance process. *Perez v. Wisc. Dept. of Corrections*, 182 F.3d 532, 537 (7th Cir. 1999)(must use process even though requested money damages not an available remedy). Even without complete relief, use of the grievance process may "help narrow a dispute or avoid the need for litigation." *Id.* Count I is dismissed for failure to exhaust administrative remedies.

## II.

Defendants argue that plaintiffs lack standing to bring the claim in Count II, requiring dismissal of that claim. In Count II, plaintiffs allege that the majority of Jail detainees with mental illness are released into the community without medication or discharge plans to manage their illness. Plaintiffs allege that

those released in to the community without such plans and medication may abuse drugs and/or alcohol, may be arrested and incarcerated, or may be hospitalized or otherwise institutionalized. Defendants argue that these alleged injuries are too speculative to provide plaintiffs with standing to bring their claims.

The federal courts are empowered to settle cases and controversies. U.S. CONST. art. III. For a particular matter to be within the jurisdiction of the court, the plaintiff must have standing to sue; that is, he must be able to show that he has suffered or will suffer an injury that is concrete, particularized, and actual or imminent, rather than conjectural or hypothetical. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Where, as here, the plaintiffs seek injunctive or declaratory relief from future government action, the controlling case is *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). In *Lyons*, the plaintiff was subjected to an unconstitutional chokehold when arrested by the Los Angeles police and sued to enjoin police from using such chokeholds in the future. *Id.* The court found that the plaintiff had no standing to pursue such an injunction because it was "no more than speculation to assert" that he would ever be arrested and illegally choked again. *Id.* at 108.

Applying *Lyons* in a more recent case, the Seventh Circuit held that a plaintiff who sought to enjoin a physician from testing for

7

HIV without patient consent lacked standing. *Sierakowski v. Ryan*, 223 F.3d 440, 444 (7th Cir. 2000). The plaintiff suffered from a medical disorder that required blood testing every three months. *Id.* at 442. The plaintiff was, at one point, admitted to a hospital for treatment and, despite his repeated refusals to consent, was tested for HIV. *Id.* Illinois law provided that physicians could test for HIV without consent if they felt the test was medically necessary for diagnosis or treatment, but plaintiff argued that the law allowing such testing was unconstitutional. *Id.* The court held that the plaintiff lacked standing, as his prospects of injury were purely speculative, despite the fact that the plaintiff had previously been tested without his consent and that he required new blood tests every three months. *Id.* at 444.

Plaintiffs' alleged potential injuries here are equally speculative. Plaintiffs allege that if they are released without discharge plans and medication, they *may* abuse alcohol or drugs, they *may* commit new crimes and be arrested and incarcerated, or they *may* become hospitalized or otherwise institutionalized. These alleged injuries are hypothetical and speculative, not "concrete, particularized, and actual or imminent." Plaintiffs have no standing to pursue injunctive or declaratory judgment against defendants. Count II is dismissed.[5]

---

[5] As both counts of the complaint have been dismissed, I do not reach the defendants' argument that Mr. Stroger, Ms. Rothstein, and Cook County are not proper defendants under the ADA.

**ENTER ORDER:**

_Elaine E. Bucklo_
**Elaine E. Bucklo**
United States District Judge

Dated: February 1, 2005